# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | **Case No. 09-00834-TLM** |
| **ALDAPE TELFORD** ) | |
| **GLAZIER, INC.,** ) | |
| ) | **Chapter 7** |
| **Debtor.** ) | |
| _____ ) | |

## MEMORANDUM OF DECISION
_____

## INTRODUCTION

The United States Trustee ("UST") seeks to dismiss this Chapter 7 case

"for cause" under § 707(a) of the Code.[1]  That section contains a nonexclusive list

of potential grounds constituting cause and, like its Chapter 11 equivalent,

§ 1112(b), which was analyzed in *In re Jayo*, 06.3 I.B.C.R. 71, 2006 WL 2433451

(Bankr. D. Idaho 2006), the Court is not constrained to find an itemized ground

but may consider any "cause" established by the record and evidence.

By agreement of the parties, the evidence consists of Exhibits 100-104 and

the declarations with attached exhibits, Doc. Nos. 22 and 23, in addition to what is

otherwise of record.  Fed. R. Evid. 201.  The Court determines that the UST's

_____

[1]  Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11
U.S.C. §§ 101-1532.

MEMORANDUM OF DECISION - 1

motion will be granted.[2]

**FACTS**

  This Chapter 7 case was commenced by a petition filed on April 3, 2009.

The Debtor is identified as "Aldape Telford Glazier, Inc." ("ATG").  ATG is an

Idaho corporation.  Per the UST's evidence, ATG filed its articles of incorporation

with the Idaho Secretary of State on November 25, 2005, and it was in good

standing as a corporation as of September 2008, a date about seven months before

the petition.  Ex. 100.

  According to the statement of financial affairs ("SOFA"), the owners of

the corporation are Tom Glazier, Jeff Aldape, and James Telford, each owning a

33.33% interest.  Doc. No. 1 at SOFA, resp. to question no. 21(b).[3]  The

"statement of corporate ownership" required by Fed. R. Bankr. P. 7007.1 discloses

the same three individuals.  Doc. No. 5.

  According to ATG's owners and counsel, ATG itself owned two subsidiary

business entities:  "The Fence & Deck Store, LLC" and "M&W Fence Company,

LLC."  ATG was the sole and "managing member" of both these Idaho limited

---

[2]  This Decision constitutes the Court's findings of fact and conclusions of law.  Fed. R.
Bankr. P. 7052, 9014.

[3]  While the SOFA indicates the "title" of each individual is "partner," that nomenclature
is inapplicable to a corporation, and the question itself calls for the listing of the "officers and
directors of the corporation, and each stockholder who directly or indirectly owns, controls, or
holds 5% or more of the voting or equity securities of the corporation."

MEMORANDUM OF DECISION - 2

liability companies.

The Fence and Deck Store, LLC, was a limited liability company filing articles with the Idaho Secretary of State on December 8, 2006. Ex. 101. M&W Fence Company, LLC, was a limited liability company with articles filed on December 21, 2005. Ex. 102.

ATG also disclosed on its statement of financial affairs, in response to question 18, that ATG and each LLC had separate tax identification and employer identification numbers (TIN/EIN). Doc. No. 1 at 30.

Thus, it is clear that ATG and the two LLCs were three separate entities.

The UST and ATG agree that both LLCs were "dissolved." Each LLC filed articles of dissolution on November 3, 2008. Exs. 101, 102. These articles asserted that "[a]ll assets revert[ed] to sole member, Aldape Telford Glazier, Inc." Ex. 101 at 2; Ex. 102, at 2.

In its schedule B (personal property), ATG discloses numerous items of equipment, inventory and vehicles. Doc. No. 1 at sch. B, categories 25, 28-30. The listings indicate values for such assets, and does so under a caption that requires disclosure of the "Current value of *Debtor's* interest in property[.]" (Emphasis added).

ATG concedes that some of the assets listed in this corporate case are, in fact, assets of the subsidiary LLCs. For example, the initial schedule B at Doc.

MEMORANDUM OF DECISION - 3

No. 1 notes "M&W" by certain of the vehicles and items of equipment.  ATG also

submitted attachments to schedule B (filed separately at Doc. No. 6) that include a

notation of "equipment and tools owned by Fence and Deck Store and M[&W]

Fence Co." at two different locations.  *See*, *e.g.*, Doc. No. 6, attach. 1 at 3, 6.[4]

ATG and its owners also indicated there was a lack of rigor in keeping

assets, liabilities, and business affairs of the three legal entities separate.  *See, e.g.,*

Doc. No. 23 at 2 (declaration of Telford and Aldape indicating that "the assets of

these businesses were used interchangeably").  They also note that all the

"businesses were operated out of the same property."  *Id.*

**DISCUSSION AND DISPOSITION**

The UST argues that the instant chapter 7 case impermissibly combines the

financial affairs of separate legal entities, and, in effect, creates a "joint petition"

of such entities when the Code contemplates and allows but for only one joint

petition, that of an individual and spouse.  *See* § 302(a).

The UST is correct.  *See Fitzgerald v. Hudson (Matter of Clem)*, 29 B.R. 3,

4, 82 I.B.C.R. 205 (Bankr. D. Idaho 1982).  In *Clem*, the Court stated:

> It is clear, under § 302(a) of the Code, that spouses may file a joint
> petition for relief.  However, an individual and his spouse are the *only*

---

[4]  Interestingly, these attachments also include listings of numerous items that "were
taken" by Telford and Aldape "for tools of trade exemption."  Doc. No. 6 at 4, 7.  As detailed
below, however, each LLC's assets were and are its own, not those of ATG or its owners, placing
the purported distribution or transfer to the individuals (and any exemption) in question.

MEMORANDUM OF DECISION - 4

> "persons," as defined by § 101(30), which may file a joint petition. While a corporation or a partnership is also recognized as a "person" by the Code and may be a debtor under § 109, there is no provision in the Code authorizing such an entity to jointly file for relief with any other.

29 B.R. at 4, 82 I.B.C.R. at 206.  Even though Bankruptcy Judge Young's *Clem* decision is decades old, it is still good law.[5]

In *Clem*, the Court refused to countenance a petition styled as "Laune D. Clem and Molly Lynn Clem, Clemco Development, M.P. Investments, D.L Properties, Alpha & Omega Investments, Debtor." *Id.* at 4.  Here, ATG filed its petition styled as "Aldape Telford Glazier, Inc. dba The Fence and Deck Store, LLC; dba M&W Fence Co., LLC."  Doc. No. 1 at 1.  Though the "dba" (doing business as) designation did not appear in the *Clem* caption, this is a distinction without a difference.[6]

---

[5]  Other jurisdictions are in accord with *Clem*. *See, e.g., In re Calhoun*, 312 B.R. 380, 383 (Bankr. N.D. Iowa 2004) ("when an LLC and one of its members both seek to file a bankruptcy petition, they must do so separately"); *In re 4-1-1 Fla. Ga. L.P.*, 125 B.R. 565, 566 (Bankr. W.D. Mo. 1991) (citing *Clem*, among other authorities, for the proposition that only spouses may file joint petitions, noting, "If there is an issue upon which all Bankruptcy Courts are and have been undivided, this is such."); *In re Jephunneh Lawrence & Assocs. Chartered*, 63 B.R. 318, 319  (Bankr. D. D.C. 1986) (professional corporation and that corporation's sole shareholder could not file joint bankruptcy petition).  *See generally* 9A Am. Jur. 2d *Bankruptcy* § 934 ("With the exception for joint cases for spouses under 11 U.S.C.A. § 302, two separate legal entities are not permitted to file one bankruptcy case, and petitions improperly joining two or more debtor entities are subject to dismissal.") (footnote citation omitted).

[6]  The Idaho Secretary of State explains on its website:  "The term 'DBA' is the abbreviation for 'Doing Business As,' which is a slang term for 'Assumed Business Name' or 'Certificate of Assumed Business Name.'"  *See* http://www.sos.idaho.gov/corp/ABN_faq.htm (last visited July 23, 2009), reproduced as Appendix B to this Decision.  Assumed business names are governed by The Assumed Business Names Act of 1997, Idaho Code §§ 53-501, *et*

(continued...)

MEMORANDUM OF DECISION - 5

ATG has not cogently or persuasively explained why the holding in *Clem* should not control. While the UST's motion could be resolved by application of *Clem* to this record, the problems in this case extend further than nomenclature or an attempted joint petition. There are, given Idaho law, fundamental errors involved in ATG's approach.

This Court has often noted that defining "property of the [bankruptcy] estate" under § 541(a) is a question of federal law, but the nature and extent of a debtor's interest in property – essential to analyze § 541(a)(1)'s capture of debtor's "legal or equitable interests in property" as of the petition date – is determined by applicable state law. *In re Fehrs*, 391 B.R. 53, 70, 08.3 I.B.C.R. 116, 122 (Bankr. D. Idaho 2008) (citing cases, including *Butner v. United States*, 440 U.S. 48, 55 (1979)). "Section 541(a)(1) focuses the inquiry on the rights of the debtor in property as of the date of the petition for relief." *Id.*

On the date of ATG's petition, it owned the membership interests in the two dissolved LLCs  –  The Fence and Deck Store, LLC, and M&W Fence Co.,

---

[6](...continued)
*seq.* Under Idaho Code § 53-503(1)(a), the term is defined to include "Any name other than the true name of any formally organized or registered entity, under which name the entity holds itself out for the transaction of business in the state of Idaho." The term "formally organized or registered entity" means a legal entity created in or authorized to do business in Idaho, and "true name" means, when applied to such a formally organized or registered entity, the name by which it is identified on its organizational documents on file. Idaho Code §§ 53-503(2), 53-503(7)(a). ATG produced no documents indicating that it, in fact and under Idaho law, was "doing business as" The Fence and Deck Store, LLC or M&W Fence Co., LLC, (such a certificate being required under Idaho Code § 53-504). Nor does such a proposition appear to be possible under the statute.

MEMORANDUM OF DECISION - 6

LLC.  Telford, testifying at the § 341(a) meeting in this case, indicated that ATG itself had no assets other than the membership interests in the two LLCs.  Those ownership interests should have been shown on ATG's schedule B at line 13 ("stocks and interests in incorporated and unincorporated businesses"), but were not:  ATG checked the column indicating "none."  Doc. No. 1.

Instead, as noted above, ATG listed on its schedule B the physical assets of the two dissolved LLCs.  Doc. Nos. 1, 6.  While this was consistent with the two LLCs' articles of dissolution that opined "all assets reverting to sole member, Aldape Telford Glazier, Inc.," it was not consistent with governing Idaho law.

Idaho's Limited Liability Company Act governs both LLCs at issue here.[7] *See* Idaho Code § 53-601 to § 53-672.  Under § 53-633(1) of this Act, "[p]roperty transferred to or otherwise acquired by a limited liability company is property of the limited liability company and not of the members individually."

Upon dissolution, an LLC does not cease to exist.  Rather, it continues to exist for the purpose of winding up its affairs.  *See* Idaho Code § 53-642, § 53-

---

[7]  Idaho's Uniform Limited Liability Company Act (the "Uniform Act"), codified at §§ 30-6-101 through 30-6-1104, replaces Idaho's Limited Liability Company Act.  The Uniform Act, however, did not take effect until July 2008, and the repeal of the Idaho Limited Liability Company Act, will take effect on July 1, 2010.  *See* Idaho Code § 30-6-101 (compiler's notes); § 30-6-1104(2).  Between July 1, 2008 and June 30, 2010, the Uniform Act governs two separate categories of LLCs: (1) LLCs formed on or after July 1, 2008; and (2) LLCs formed before July 1, 2008 that elect, "in the manner provided in its operating agreement or by law for amending the operating agreement," to be subject to the Uniform Act.  *See* Idaho Code § 30-60-1104(1).  The LLCs at issue here formed before July 1, 2008, *see* Exs. 101, 102, and there is no evidence indicating that either LLC elected to be subject to the Uniform Act.  Thus, these LLCs are subject to Idaho's Limited Liability Company Act.

MEMORANDUM OF DECISION - 7

644, § 53-645, § 53-646.[8]

Idaho Code § 53-642 provides that an LLC "is dissolved and its affairs shall be wound up" upon the first to occur of various events, including, for example, the written consent of all members.

Idaho Code § 53-644 indicates which persons are authorized to wind up the business affairs of an LLC, and the particular acts such a person may take to effect the wind up. For example, the person authorized to wind up the LLC's affairs may prosecute and defend suits, settle and close the business, dispose of and transfer the LLC's property, discharge the LLC's liabilities, and distribute the remaining assets (if any) to the members. Idaho Code § 53-644(2).

Idaho Code § 53-645 further clarifies that "after dissolution of the limited liability company, each of the members having authority to wind up the limited liability company's business and affairs can bind the limited liability company" through, among other things, "acts appropriate for winding up the limited liability company's affairs or completing transactions unfinished at dissolution." Idaho Code § 53-645(1)(a).

Finally, Idaho Code § 53-646 sets out the manner in which the LLC's assets "shall be distributed" upon the winding up. LLC assets are distributed as

---

[8] Statutory provisions relevant to dissolution and the winding-up process include Idaho Code §§ 53-642, -644, -645, and -646. These provisions are discussed further below and set forth in full in Appendix A to this Decision.

MEMORANDUM OF DECISION - 8

follows: (1) first, to its creditors; (2) second to its members in satisfaction of

liabilities for distributions under Idaho Code § 53-629 and § 53-630 (respectively,

interim distributions, and distributions on an event of disassociation); and (3) third

to its members, "first for the return of their contributions and second in proportion

to the member's respective rights to share in distributions from the limited liability

company prior to dissolution."  Idaho Code § 53-646(1) to (3).

ATG does not dispute that these provisions of Idaho statutory law control.

It evens quotes some of them in briefing and argument.  But ATG incorrectly

interprets Idaho law.  The approach ATG takes commingles the LLCs' assets into

a single pot, and effectively casts the same as constituting "property of the estate"

of ATG.  However, an LLC member may not treat the assets of the LLC as its own

prior to the completion of the winding up process.  *Accord Mid-American*

*Elevator Co. v. Norcon, Inc.*, 679 N.E.2d 387, 392 (Ill. App. Ct. 1996)

(shareholders may not treat corporate assets as their own prior to completion of the

winding up process).[9]

---

[9]  There is no Idaho case law directly on point.  The Court concludes, however, that if the issue were presented, the Idaho Supreme Court would adopt the same approach as the Illinois court, given the operative provisions of the Idaho Code.  *See JP Morgan Chase Bank, N.A., v. Cougar Crest Lodge, LLC (In re Weddle)*, 2006 WL 3692425, at *4 (Bankr. D. Idaho Dec. 12, 2006) (in the absence of controlling authority, the bankruptcy court may undertake its own analysis in an effort to predict how the Idaho Supreme Court would resolve the issue).  There is no provision in the Idaho Code indicating that upon dissolution, LLC property automatically reverts to the LLC members.  To the contrary, Idaho Code § 53-633 provides that LLC property belongs to the LLC, not the individual members.  A dissolution does not negate this provision or otherwise effect a transfer of LLC assets to the individual members.  Rather, a dissolution triggers
(continued...)

MEMORANDUM OF DECISION - 9

There is no evidence here that the winding up process for The Fence and Deck Store, LLC and M&W Fence Co., LLC, concluded.  *See* Idaho Code § 53-644, § 53-646, and § 53-648.  There is nothing, therefore, to establish that those LLCs' creditors were paid under § 53-644(2)(d), or received an appropriate distribution of assets under § 53-646(1), or had their claims disposed of under § 53-648.[10]

As such, ATG cannot, by definition, have received any distribution of assets from the LLCs.  Recall, under § 53-646, assets must be distributed *first* to creditors, and only then to members.  ATG's claim to the LLCs' assets is thus contingent, and depends on what the claims of creditors might be and the value of all the assets.  And, it can be noted, ATG's objection to the UST's motion admits it is unlikely that any payments would be made beyond the first "creditor" tier in § 53-646(1), stating, "It is doubtful that any distribution to such members and former members will have any dividend whatever."  Doc. No. 16 at 4.

It may well be that ATG gained *possession* of the LLCs' assets because, as

---

[9](...continued)

the winding-up process.  Ultimately, members of dissolved LLCs acquire LLC property as their own if (and only if) assets are distributed to them upon the winding up, in accordance with the priority scheme laid out in § 53-646.  Consequently, this Court's holding that LLC members cannot treat assets of a dissolved LLC as their own prior to such a distribution is consistent with governing Idaho statutory provisions.

[10]  Sections 53-644 and § 53-646 were discussed above.  Section 53-648 (quoted in full in Appendix A) sets forth a procedure by which an LLC "may dispose of known claims against it . . . ."

MEMORANDUM OF DECISION - 10

the LLCs' sole member, it would be effecting the wind up of the dissolved LLCs under Idaho law.  But possession does not equate to ownership.  ATG's holding and distribution of these assets is strictly controlled and circumscribed by the Idaho Code.

ATG makes two arguments in regard to the LLC dissolution process, neither of which are persuasive.  The first is that ATG's bankruptcy trustee can handle the process of identifying and segregating the physical assets and accomplishing the wind up process for both LLCs.  ATG unreasonably and inappropriately attempts to shift its duties, and those of its owners, officers and directors, to the shoulders of the trustee.  Not only would ATG put the onus on the trustee to send notices and do the accounting required to wind up the two subsidiary LLCs, it would also apparently ask him to divine which entity owns which assets, something even ATG has not yet clearly and fully done in its schedules.  ATG's approach would suggest the trustee do the work that ATG and its owners should do by law, but decline to do.

In variations on this theme, ATG's "second supplemental" brief suggests the trustee "can himself" file articles of dissolution (evidently for ATG because such articles were already filed for the two LLCs).  Doc. No. 21 at 2.  This is a non sequitur.  ATG also suggests that its trustee could file chapter 7 petitions for the LLCs (evidently as the "owner" of those entities).  Like asking the trustee to wind

MEMORANDUM OF DECISION - 11

up the LLCs' affairs, requesting the trustee to file bankruptcy petitions for those

entities once again unfairly shifts to the trustee an obligation or burden that lies

properly on ATG and its owners. The UST put it well: the approaches suggested

by ATG puts the trustee to "the burden of sorting through the LLC's detritus so

the members can avoid fulfilling their fiduciary duties."

Secondly, ATG argues that the trustee could pursue "substantive

consolidation" of ATG and the two LLCs. The concept of substantive

consolidation no doubt exists; it was validated in this District as far back as 1983

in *Matter of Luth*, 28 B.R. 564, 83 I.B.C.R. 31 (Bankr. D. Idaho 1983). The

problem, of course, is that the prerequisites for application of that theory have not

been established or shown to exist. The idea that the trustee should be put to the

effort to initiate and prosecute the litigation to achieve substantive consolidation is

unreasonable.[11]

**CONCLUSION**

With the benefit of operating in a corporate or limited liability form come

burdens. ATG and its subsidiaries and its owners seek to enjoy the benefits but to

ignore, finesse or foist off the burdens. That is improper.

Despite ATG's protests, this filing is an attempt to combine the liquidation

---

[11]   The UST also correctly argues that at least one proper case filing is a prerequisite to
this Court exercising its jurisdiction to consider substantive consolidation of that case and its
assets and liabilities with another debtor's case or with the assets and liabilities of a non-debtor
entity.

MEMORANDUM OF DECISION - 12

of multiple entities in a single chapter 7 case.  Such a "joint" petition is not

allowed.  *Clem*, 29 B.R. at 4, 82 I.B.C.R. at 206.  The UST has established

adequate cause under § 707(a).  The Court also agrees with the UST that ATG's

approach has confounded the situation to such a degree, that dismissal remains the

only appropriate resolution here.

     The UST's Motion will be granted.  The Court will enter a separate order.

DATED: July 23, 2009

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 13

## Appendix A

**Idaho Code § 53-642**. **Dissolution**

A limited liability company is dissolved and its affairs shall be wound up upon the happening of the first to occur of the following:

(1)     At the time or upon the occurrence of events specified in writing in the articles of organization or an operating agreement;

(2)     The written consent of all members;

(3)     An event of dissociation of a member, unless:

    (a)     The business of the limited liability company is continued by the consent of all the remaining members on or before the 90th day following the occurrence of any such event; or

    (b)     Otherwise provided in writing in an operating agreement;

(4)     Entry of a decree of judicial dissolution under section 53-643, Idaho Code; or

(5)      Administrative dissolution by the secretary of state pursuant to section 53-643B, Idaho Code.

**Idaho Code § 53-644**. **Winding up**

Unless otherwise provided in writing in an operating agreement:

(1)     The business or affairs of the limited liability company may be wound up

    (a)     By the members or managers who have authority pursuant to section 53-621, Idaho Code, to manage the limited liability company prior to dissolution; or

    (b)     If one (1) or more of such members or managers have engaged in wrongful conduct, or upon other cause shown, by the district court on application of any member or any member's legal representative or assignee.

(2)      The persons winding up the business or affairs of the limited liability company may, in the name of, and for and on behalf of, the limited liability company:

    (a)     Prosecute and defend suits;

    (b)     Settle and close the business of the limited liability company;

    (c)      Dispose of and transfer the property of the limited

MEMORANDUM OF DECISION - 14

<div style="margin-left:2em">
liability company;

(d)    Discharge the liabilities of the limited liability company; and

(e)     Distribute to the members any remaining assets of the limited liability company.
</div>

**Idaho Code § 53-645**. **Agency powers of managers or members after dissolution**

(1)    Except as provided in subsections (3), (4) and (5) of this section, after dissolution of the limited liability company, each of the members having authority to wind up the limited liability company's business and affairs can bind the limited liability company:

    (a)    By any act appropriate for winding up the limited liability company's affairs or completing transactions unfinished at dissolution; and

    (b)    By any transaction that would have bound the limited liability company if it had not been dissolved, if the other party to the transaction does not have notice of the dissolution.

(2)     The filing of the articles of dissolution shall be presumed to constitute notice of dissolution for purposes of subsection (1)(b) of this section.

(3)    An act of a member which is not binding on the limited liability company pursuant to subsection (1) of this section is binding if it is otherwise authorized by the limited liability company.

(4)     An act of a member which would be binding under subsection (1) of this section or would be otherwise authorized but which is in contravention of a restriction on authority shall not bind the limited liability company to persons having knowledge of the restriction.

(5)    If the articles of organization vest management of the limited liability company in managers, a manager shall have the authority of a member provided for in subsection (1) of this section, and no member shall have such authority if the member is acting solely in the capacity of a member.

MEMORANDUM OF DECISION - 15

**Idaho Code § 53-646**.  **Distribution of assets**

Upon the winding up of a limited liability company, the assets shall be distributed as follows:

(1)    Payment, or adequate provision for payment, shall be made to creditors, including, to the extent permitted by law, members who are creditors in satisfaction of liabilities of the limited liability company;

(2)    Unless otherwise provided in writing in an operating agreement, to members or former members in satisfaction of liabilities for distributions under sections 53-629 and 53-630, Idaho Code; and

(3)    Unless otherwise provided in writing in an operating agreement, to members and former members first for the return of their contributions and second in proportion to the members' respective rights to share in distributions from the limited liability company prior to dissolution.

**Idaho Code § 53-647**.  **Articles of dissolution**

After the dissolution of the limited liability company pursuant to subsection (1), (2) or (3) of section 53-642, Idaho Code, the limited liability company shall file articles of dissolution with the secretary of state which set forth:

(1)    The name of the limited liability company;

(2)    The date of filing of its articles of organization;

(3)    The reason for filing the articles of dissolution; and

(4)    Any other information the members or managers filing the certificate shall deem proper.

**Idaho Code § 53-648.  Known claims against dissolved limited liability company**

(1)    Upon dissolution, a limited liability company may dispose of the known claims against it by filing articles of dissolution pursuant to section 53-647, Idaho Code, and following the procedures described in this section.

(2)    The limited liability company shall notify its known claimants in writing of the dissolution at any time after the effective date of dissolution. The written notice must:

(a)    Describe information that must be included in a claim;

(b)    Provide a mailing address where a claim may be sent;

MEMORANDUM OF DECISION - 16

    (c)    State the deadline, which may not be fewer than one hundred twenty (120) days after the later of the date of the written notice or the filing of articles of dissolution pursuant to section 53-647, Idaho Code, by which the limited liability company must receive the claim; and

    (d)    State that the claim will be barred if not received by the deadline.

(3)    A claim against the limited liability company is barred:

    (a)    If a claimant who was given written notice under subsection (2) of this section does not deliver the claim to the limited liability company by the deadline;

    (b)    If a claimant whose claim was rejected by the limited liability company does not commence a proceeding to enforce the claim within ninety (90) days after the date of the rejection notice.

(4)    For purposes of this section, "claim" does not include a contingent liability or a claim based on an event occurring after the effective date of dissolution.

MEMORANDUM OF DECISION - 17

**Appendix B**
**(shown on the following three pages)**

MEMORANDUM OF DECISION - 18



## IDAHO SECRETARY OF STATE
## Business Entities

Ben Ysursa, Secretary of State

# Assumed Business Names
# Frequently Asked Questions

### Were Certificates of Assumed Business Name (ABN) previously recorded with a county automatically transferred to the Secretary of State's Office?

No. ABN's previously recorded at the county level were not transferred to the Secretary of State's office.

---

### I have a recorded ABN with the county recorder under the old law, must I file a new Certificate with the Secretary of State?

Yes. Certificates recorded with the county recorder became ineffective on December 31, 1998. Idaho Code Section 53-504 reads "…Any person who proposes to or intends to transact business in Idaho under an assumed business name shall, before beginning to transact business, file with the secretary of state a certificate of assumed business name…."

---

### What is the difference between a DBA and an ABN?

None. The term "DBA" is the abbreviation for "Doing Business As," which is a slang term for "Assumed Business Name" or "Certificate of Assumed Business Name."

---

### How long does an ABN filed with the Secretary of State's office remain effective?

Previously, ABN's required a continuation every five years to stay in effect. Beginning April 2003 ABN filings are perpetual and remain in effect until cancelled by the owner. The change applies retroactively to all ABN's filed with the Secretary of State's office.

---

### What happens if two businesses file certificates for the same ABN?

Both will be accepted. Certificates of Assumed Names are notice filings only. There is no protection for an assumed name against another business entity using the same name.

---

**Can I fax my ABN application to the Secretary of State's Office?**

Yes, but payment must accompany the fax, either by credit card payment or use of a prepaid account. The fax number directly to the Business Entity division is (208) 334-2080.

---

**Can a filed ABN be changed or cancelled? If so what is the fee?**

Yes, on a Cancellation or Amendment of Certificate of Assumed Business Name form. The name, mailing address, owners names, owners address, type of business can be changed. The fee for an amendment is $10.00. (There is no fee for cancellations.)

Link to ABN forms page

Link to Assumed Business Name Fee Schedule

---

**Must the forms be filed in duplicate?**

No, only one original is required.

---

**Must an ABN be filed on a special form?**

Yes, The form Application for Certificate of Assumed Business Name is available at the Secretary of State's office, Department of Commerce, print shops, banks, law offices, etc.

Link to ABN forms page

---

**Will Assumed Business Name Information be available on-line?**

Yes. ABN filings are a public record and are included in the Secretary of State's on-line search.

---

**Must the ABN filing form be notarized?**

No. Notarization is not necessary.

---

Previous Page      Idaho Secretary of State's Main Page      State of Idaho Home Page

Comments, questions or suggestions can be emailed to: sosinfo@sos.idaho.gov